1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11    SNAP! MOBILE, INC.,                    CASE NO. 2:24-cv-01610-LK

12                        Plaintiff,          ORDER GRANTING MOTION TO
              v.                              REMAND
13    DANIEL BULLINGTON,

14                        Defendant.

15

16        This matter comes before the Court on a Motion to Remand filed by Plaintiff SNAP!

17    Mobile, Inc. ("Snap"). Dkt. No. 4. Snap contends that Defendant Daniel Bullington has not shown

18    that the amount in controversy is met, and thus, the Court lacks subject matter jurisdiction. *Id.* at

19    1. For the reasons set forth below, the Court grants the motion and remands this case.

20                              **I.    BACKGROUND**

21        Snap developed an online platform to assist sport teams, coaches, and teachers to raise

22    money through online donation campaigns. Dkt. No. 1-1 at 3. Bullington worked for Snap from

23    2017 until he left in February 2024 to work for Snap's competitor SchoolFundr. *Id.* at 2, 4–5.

24

ORDER GRANTING MOTION TO REMAND - 1

1    During his employment with Snap, Bullington agreed to the Snap Option Agreement (the

2    "Agreement") in 2020, then again each subsequent year. *Id.* at 4. Under the Agreement, Bullington

3    promised not to solicit Snap's customers or employees for a period of 18 months following the

4    termination of his employment with Snap, and to maintain the confidentiality of Snap's

5    information. *Id.* On August 23, 2024, Snap filed suit in King County Superior Court alleging that

6    Bullington breached the Agreement by soliciting Snap's customers and employees and using its

7    confidential, proprietary, and trade secret information for the benefit of SchoolFundr. *Id.* at 1, 4–

8    6.

9    Bullington removed the case to this Court on October 4, 2024. Dkt. No. 1. Snap moved to

10    remand on the same day, Dkt. No. 4, then Bullington filed a motion to dismiss for lack of personal

11    jurisdiction, Dkt. No. 10. Bullington opposes the motion to remand. Dkt. No. 14.

12                              **II.    DISCUSSION**

13    The Court considers the motion to remand before Bullington's motion to dismiss for lack

14    of personal jurisdiction because customarily, the Court "first resolves doubts about its jurisdiction

15    over the subject matter[.]" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

16    **A.    Legal Standard**

17    Federal courts "have an independent obligation to determine whether subject-matter

18    jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This determination is an

19    "inflexible" threshold requirement that must be made "without exception, for jurisdiction is power

20    to declare the law and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas*

21    *AG.*, 526 U.S. at 577 (cleaned up). "If at any time before final judgment it appears that the district

22    court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also*

23    *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

24    Removal of a civil action to federal district court is proper when the federal court would

have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* Doubts as to removability are thus resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). When a case is removed, the burden is on the removing defendant to prove by a preponderance of the evidence that the amount in controversy requirement is met. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006).

The amount in controversy is an "estimate of the entire potential amount at stake in the litigation[.]" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (emphasis omitted); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("'Amount at stake' does not mean likely or probable liability; rather, it refers to possible liability."). This includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (cleaned up). It encompasses, among other things, "damages (compensatory, punitive, or otherwise) as well as attorneys' fees awarded under fee shifting statutes," *id.* at 648–49, or provided by contract, *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002).

To determine whether the jurisdictional amount in controversy has been satisfied, courts may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson*, 319 F.3d at

1090 (cleaned up). A defendant who removes a case thus "may point to many different types of evidence" to establish the amount in controversy, and "[a] particularly powerful form of evidence is the plaintiff's own statements about the damages they seek." *Flores v. Safeway, Inc.*, No. C19-0825-JCC, 2019 WL 4849488, at *3 (W.D. Wash. Oct. 1, 2019).

**B.    Remand is Warranted**

Section 1332(a)(1) requires complete diversity; that is, each plaintiff must be a citizen of a different state than each of the defendants. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004). Bullington's notice of removal states that Snap is a Delaware Corporation with its principal place of business in King County, Washington, and Bullington is a resident and citizen of California. Dkt. No. 1 at 2. Snap does not dispute these facts. *See generally* Dkt. No. 4.

Snap does, however, dispute the amount in controversy. It argues that Bullington's assertions that the amount in controversy is met are conclusory. Dkt. No. 4 at 1, 4. Bullington responds that "it is clear from Plaintiff's Complaint and past cases that the amount in controversy is more likely than not in excess of $75,000." Dkt. No. 14 at 1.

The complaint does not allege a specific amount of damages and avers that Bullington's "breaches have caused Snap to lose revenue and profits, incur investigation expenses, and suffer other damages." Dkt. No. 1-1 at 6 (seeking Snap's "losses, attorney fees, costs, and litigation expenses for Defendant's breaches of contract"). The complaint also seeks injunctive relief prohibiting Bullington from soliciting Snap's employees or clients and requiring the return of Snap's confidential information, "actual damages and/or unjust enrichment for breach of contract," "proximately caused damages and/or disgorgement of compensation Defendant received during the time period he was in breach of his contracts with Snap," prejudgment interest on all amounts awarded, and "all other relief deemed just and equitable." *Id.* at 7.

Where, as here, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (cleaned up). As with the complaint, the allegations in the notice of removal are too conclusory to establish the amount in controversy. Bullington's notice of removal offers only the following:

- "[I]t is clear from the causes of action Plaintiff asserts the amount in controversy exceeds $75,000." Dkt. No. 1 at 3.

- Snap "alleges it sustained damages as a result of Defendant's purported breach of contract (*see* Exh. 1, Complaint at ¶¶ 34–41). Accordingly, because Plaintiff's well-pled complaint shows a plausible claim for damages in excess of $75,000, and Plaintiff has not pleaded a lesser figure, the amount in controversy required for diversity jurisdiction is met." *Id.*

A removing defendant's "conclusory statement, unsupported by factual evidence, does not meet its burden of establishing the requisite amount in controversy by a preponderance of the evidence." *See Markham v. Cash & Carry Stores, LLC*, No. C17-0746-JLR, 2017 WL 2241136, at *1 (W.D. Wash. May 23, 2017).

Bullington also argues that "[f]or a national company such as Snap! Mobile that 'has helped raise over $900 million for 125,000 teams, clubs, and organizations across the country' since 2014, Defendant reasonably anticipates that its alleged damages and appeal for an injunction against 'immediate and irreparable' harm should exceed $75,000." Dkt. No. 14 at 5 & n.1 (quoting information from Snap's website at https://www.snapraise.com/about-us/; last visited January 21, 2025). Even if the Court were to consider the amount Snap has raised for its clients, Bullington

ORDER GRANTING MOTION TO REMAND - 5

1    has not explained how that amount translates into an amount in controversy in this case or to the

2    alleged harm he has caused Snap.

3        Bullington also cites to an earlier case Snap brought against another employee, Daniel

4    Chinea, where it obtained a judgment for $374,088.72, including $252,083.25 in attorney's fees.

5    Dkt. No. 14 at 5–6. Bullington notes that Snap referenced that result in its cease and desist letter

6    to Bullington, which shows that Snap "anticipates requesting damages well in excess of the

7    jurisdictional limit for diversity jurisdiction." *Id.* at 6. Snap responds that the letter "was not an

8    explication of Snap's damages in this case. Instead, the purpose of the letter was to inform

9    Defendant that Snap was prepared to vindicate its rights in a judicial forum if Defendant did not

10   cease his misappropriation of Snap's trade secrets and confidential information." Dkt. No. 17 at 3.

11   The cease and desist letter does not include any demand for a specific amount of damages or a

12   calculation thereof and thus is not evidence of such damages. *See, e.g.*, *Flores*, 2019 WL 4849488,

13   at *3.

14       Bullington also argues that the result in *Chinea* shows that "the contractual attorney fees

15   [Snap] would claim as a prevailing party will almost certainly exceed $75,000." Dkt. No. 14 at 6;

16   *see also* Dkt. No. 15-3 at 2–3. Snap responds that the *Chinea* result is "inapposite" for three

17   reasons:

18       First, the claims against Chinea were based on his Employment Agreement with
         Snap, which included a fee-shifting provision that allowed the prevailing party to
19       obtain fees. Snap's claim in this case, by contrast, is based on Defendant's
         agreement to Snap's Stock Plan, which does not contain a prevailing party fee-
20       shifting clause. Second, the Chinea default judgment was entered as a result of the
         Defendant's repeated, willful violations of multiple court orders, which required
21       numerous motions that increased the attorneys' fees Snap expended in that case.
         Third, and relatedly, the lost profits Snap recovered in *Chinea* were undisputed
22       because of the procedural context, and were only accounted for following roughly
         18 months of litigation and discovery into Chinea's misconduct—at the outset of
23       the case there was no way for any party to know what the damages would be for
         Chinea's contractual violations (which is the case here).

24

ORDER GRANTING MOTION TO REMAND - 6

1   Dkt. No. 17 at 4. Snap also notes that "in the majority of analogous cases where Snap has obtained

2   a favorable judgment against a former employee for breach of contract, Snap has primarily pursued

3   equitable relief. Monetary damages, if sought and obtained at all, have generally been well under

4   $75,000." *Id.* at 4–5 (citing cases). In evaluating a motion to remand, courts can consider

5   "settlements and jury verdicts in similar cases" when those cases are "factually identical or, at a

6   minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d

7   1034, 1055 (C.D. Cal. 2012); *see also Republic Bag, Inc. v. Beazley Ins. Co.*, 804 F. App'x 451,

8   453 (9th Cir. 2020) (district court did not err in considering evidence of jury verdicts in

9   determining whether the amount in controversy exceeded $75,000). Snap cites multiple cases

10  against its former employees that resulted in only injunctive relief (of unspecified value), Dkt. No.

11  18 at 1–2; Dkt. Nos. 18-1–18-2, and awards for significantly less than the $75,000 jurisdictional

12  threshold, Dkt. No. 18 at 2; Dkt. No. 18-3–18-5. Moreover, two other courts in this district have

13  concluded that the recovery in *Chinea* did not support a jurisdictionally sufficient amount in

14  controversy in suits against two other former Snap employees. *Snap! Mobile, Inc. v. Miller*, No.

15  C24-1569-RSM, Dkt. No. 19 at 6 (W.D. Wash. Nov. 4, 2024) (Order Granting Plaintiff's Motion

16  to Remand) ("Chinea breached a different contract with different substantive and procedural

17  circumstances, including unusual circumstances giving rise to high attorney fees."); *Snap! Mobile,*

18  *Inc. v. O'Donnell*, No. C24-1536-KKE, Dkt. No. 26 at 8 (W.D. Wash. Dec. 10, 2024) (Order

19  Granting Motion to Remand) (noting the "unique circumstances that led to the *Chinea* judgment").

20  The Court agrees that *Chinea* is not sufficiently similar to demonstrate by a preponderance of the

21  evidence that the amount in controversy is met here. Furthermore, although future attorney fees

22  are considered "at stake" in the litigation and must be included in the amount in controversy, the

23  removing defendant bears the burden of proving the fee amount by a preponderance of the

24  evidence, and a court "may reject [a] defendant's attempts to include future attorneys' fees in the

amount in controversy" if the defendant fails to carry its burden of proof. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794–95 (9th Cir. 2018) (cleaned up). Bullington fails to explain why he believes this case would fall into the minority of cases that end in trial rather than in a relatively prompt settlement.

## III.  CONCLUSION

Based on the foregoing reasons, the Court GRANTS Snap's Motion to remand. Dkt. No. 4. In light of the remand, it DENIES as moot Bullington's motion to dismiss, Dkt. No. 10, and Snap's motion for relief from deadline, Dkt. No. 21. The Court further ORDERS that

1.      Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2.      The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County Washington;

3.      The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

4.      The Clerk of the Court shall CLOSE this case.

Dated this 21st day of January, 2025.

Lauren King
United States District Judge